UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

                                                    Case No. 08-18603-BKC-JKO

WATERBROOK PENINSULA, LLC
a Florida limited liability company,                Chapter 11

    Debtor and Debtor-in-Possession.

_____/

WATERBROOK PENINSULA, LLC               Adversary Pro. No.09-01213-JKO-A

    Plaintiffs

v.

PENINSULA LENDERS, LLC, STATESIDE
CAPITAL CORP. And 3061 LENDERS, LLC,

    Defendants.
_____/

**MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION AGAINST PENINSULA LENDERS, LLC,
<u>STATESIDE CAPITAL CORP., AND 3061 LENDERS, LLC.</u>**

**(EMERGENCY HEARING REQUESTED)**

<u>Basis for Emergency</u>

**The principals of Debtor and defendants are engaged in various lawsuits arising from loan and business transactions or other obligations directly or indirectly related to the operating and managing Debtor. Debtor's ability to provide full attention to a successful reorganization is jeopardized by its principals need to simultaneously defend these numerous Actions (as defined below). In order to be able to focus exclusively on the operation of Debtor's business, construct the building, provide employment for subcontractors, sell the Property, and therefore successfully reorganize Debtor, it seeks to have its principals relieved of the obligation to defend the Actions during the pendency of this Chapter 11 case. For these reasons, and as more fully set for the herein, it is**

> **critical that pending litigation matters are immediately suspended and Debtor and its principals can provide their exclusive focus to successfully reorganizing Debtor consistent with the provisions of Title 11 of the United States Code and to avoid limiting the negative effect that such litigation will have on Debtor's reorganization efforts. Further, Debtor and the Movants are aware of this Court's unavailability of during the first few weeks of March, 2009. Therefore, the Movants believe that a hearing on this Motion needs to be held as soon as possible.**

Waterbrook Peninsula, LLC ("Waterbrook" or the "Debtor"), Thomas N. Yianilos, ("Yianilos"), and L. William Rudnick ("Rudnick") (also collectively referred to herein as the "Movants") bring this motion pursuant to, *inter alia*, 11 U.S.C. §105(a) and Fed. R. Bankr. P. 7001(7) seeking injunctive relief enjoining prosecution of the following lawsuits or threatened lawsuit during the pendency of this Chapter 11 case:

a. Peninsula Lenders, LLC ("Lenders"), Case No. 502008CA001870XXXXMBAG pending in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida;

b. Stateside Capital Corp ("Stateside"), Case No. 502008CA006916XXXXMB-AA pending in the Fifteenth Judicial Circuit in and for Palm beach, Florida;

c. 3061 Lenders, LLC ("3061") Case No. 08-33111(ii) pending in the Seventeenth Judicial Circuit in and for Broward County, Florida (collectively, the "Actions").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, in that it arises in and relates to Debtor's chapter 11 case pending before this Court.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

3. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

4. The statutory predicates for the relief sought are 11 U.S.C. §105(a) and 28 U.S.C. § 1334 and Fed. R. Bankr. P. 7001(7).

**THE PARTIES**

5. Plaintiff, Debtor, is a Delaware Limited Liability Company, duly organized and existing with a usual place of business at 2769 North Federal Highway, Boynton Beach, Florida and is also Debtor and debtor-in-possession in the above captioned bankruptcy case pursuant to 11 U.S.C.§§ 1107(a) and 1108.

6. Yianilos is an individual residing in Broward County, Florida.

7. Rudnick is an individual residing in Broward County, Florida.

8. Defendant, Lenders is a Florida Corporation with its principal place of business in Palm Beach County, Florida

9. Defendant, Stateside, is a Florida corporation with an address of 75 N.E. 6th Avenue, Delray Beach, Florida 33483.

10. Defendant, 3061 is a Florida Limited Liability Company with its principal address at 75 N.E. 6th Avenue, Suite 103, Delray Beach, Florida 33483.

**BACKGROUND**

11. On June 25, 2008 (the "Petition Date") Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

12. Debtor is developer, owner, and operator of a residential development, "Peninsula on the Intracoastal," located at 2649 North Federal Highway, Boynton Beach, Florida 33435 (the "Property"). Debtor's primary business is the construction of the Property and execution of purchase and sale agreements for the sale of condominium or townhouse units in the Property.

13. Waterbrook's primary financing was provided by National City Bank, ("NCB")[1] which holds a land acquisition note in the principal amount of $7,463,000 and a construction note in

---

[1] On or about January 2, 2007, PNC Financial Services Group, Inc. announced that it was acquiring National City Bank.

3

the principal amount of $18,643,000 (collectively referred to as the "NCB Note"). The NCB Note is secured by a first position mortgage on the Property.

14. In addition to the NCB Note, Waterbrook obtained secured junior financing from Lenders. Waterbrook executed a promissory note in favor of Lenders in the initial amount of $3,000,000 on September 19, 2005. Subsequently, Waterbrook executed a promissory note in favor of Lenders in the amount of $500,000 in connection with a future advance which is secured by a second position mortgage on the Property.

15. The common nexus of the three defendants is Norman S. Weinstein, who serves as a principal and operative of all defendants

16. Debtor is operated under the direct supervision and control of Yianilos and Rudnick. With the conclusion of other real estates ventures, Debtor remains the sole business controlled by Yianilos and Rudnick. Without the full and undivided attention of Yianilos and Rudnick to the business of Debtor's operations, which are being managed successfully in the post-petition period, the potential of a successful reorganization will be severely and irreparably jeopardized.

17. In an effort to save Debtor, Yianilos and Rudnick made many personal commitments designed to stabilize the businesses. Some of those commitments included taking on substantial personal liability for certain obligations of Debtor. Peninsula and Stateside are holders of such obligations that have been personally guaranteed by Yianilos and Rudnick for the benefit of Debtor. 3061 is the holder of an obligation of a separate entity that was controlled by Yianilos and Rudnick, but no longer has any operations. 3061 also obtained personal guaranties from Yianilos and Rudnick.

18. As noted above, each of the Defendants has commenced and is prosecuting or has threatened to commence an action against Yianilos and Rudnick. Each day, Yianilos and Rudnick

are burdened with and are mired in the morass of ancillary litigation, which the vast majority of which arise from the underlying obligations of Debtor and which seriously distract Yianilos and Rudnick from the attention which they need to devote to the successful operations of Debtor. The cumulative effect of the litigation or threatened litigation will have catastrophic, deleterious effects on the ability of Debtor to reorganize.

19.     As this Court is well aware, Yianilos and Rudnick take their responsibilities in this case and Court very seriously, as indicated by, among other things, working for Debtor these past two months despite the expiration of DIP financing or a finalized agreement for addition DIP financing with National City Bank, and therefore, without any personal income. The calculated prosecution of the Actions, by what can only be designated as disgruntled creditors, at a time when Yianilos and Rudnick are engaged in the utmost good-faith and in applying all of their energy to facilitate a reorganization, suggests that the Defendants' ulterior motives are to derail a legitimate reorganization effort of Debtor by causing Yianilos and Rudnick to divert their attention from the responsibilities that operating as a debtor-in-possession demands.

20.     For the few months when they were receiving compensation, Yianilos and Rudnick were receiving modest compensation under a DIP budget that had been approved by the Court. Any funds which Yianilos and Rudnick have needed to cover ordinary and necessary living expenses have been derived from access to the assets which they own. Without access to their funds to cover ordinary and necessary living expenses, and with the constant distraction of dealing with the Actions, including discovery, consultations with counsel, and threatened post-judgment collections actions, and mediations, it is simply a matter of time until Yianilos and Rudnick will be required to make a strategic decisions as to whether to remain with Debtor or seek other opportunities that will allow them to fully provide for their families.

21. Through December 31, 2008, Debtor had approved DIP financing that permitted the construction and management of the Property.  Due to circumstances beyond the control of Debtor, Yianilos or Rudnick, construction of the Property was not completed as of December 31, 2008.

22. As a result of various disagreements and complications between and among Debtor, NCB and the former general contractor on the Property, Debtor was forced to terminate its contract with its former general contractor.  Debtor has since endeavored to complete the construction of the Property as its own general contractor, utilizing the general contractor's license of Yianilos.

23. Debtor has been in constant negotiations with NCB to provide additional DIP financing for completion of the Property.  To that end, Yianilos and Rudnick's attention and time has been focused on maximizing the value of Debtor's assets for all creditors.  To the extent Debtor is successful in obtaining additional DIP financing, Yianilos and Rudnick's time commitment will increase dramatically from their already hefty burden.

24. In addition to negotiating DIP financing, Debtor, through Yianilos and Rudnick, are utilizing extensive efforts to maximize the assets of the estate through a sale of the Property and settlement of customer deposits related to purchase and sale agreements for units on the Property.

25. In connection with the sale of the Property, Debtor, through Yianilos and Rudnick, must solicit interest in the Property, negotiate the terms of a stalking horse purchase and sale agreement, provide constant access to the Property and prepare due diligence materials, engage an auctioneer and real estate broker, and otherwise advance Debtor's sale efforts.

26. The foregoing does not even account for the significant legal expenses to defend the Actions.   Upon information and belief, none of the Defendants are confronting any limitation periods of any kind or nature in the prosecution of the Actions and will suffer no procedural prejudice.

6

**ARGUMENT**

27. Section 105(a) of the Bankruptcy Code provides the Court with broad authority to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. §105(a). Section 105(a) essentially codifies the Bankruptcy Court's inherent equitable powers. *See Management Technology Corp., v Pardo,* 56 B.R. 337, 339 (Bankr. D.N.J. 1985) (court's equitable power derived from Section 105). This broad authority includes, but is not limited to, the authority to enjoin actions against third party non-debtors in a case like the one before the Court where the failure to do so would negatively affect the estate and limit, and possible preclude, the ability of Debtor to successfully reorganize. The most widely-cited case authorizing entry of injunctions to protect third party non-debtors is *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.)*, 25 B.R. 1018 (D.N.M. 1982) (district court affirmed bankruptcy court's order that permanently enjoined a bank from executing or otherwise collecting on state court judgment against president of corporate debtor which was guarantor of debtor's promissory notes).

28. Numerous courts within the Eleventh Circuit have followed the instructive analysis of *Otero Mills,* and based on appropriate facts, issued injunctions in favor of third party non-debtors. *See e.g., The St. Petersburg Hilton v. First Union Nat'l Bank (In re St. Petersburg Harborview Hotel Corp.)* 168 B.R. 770 (Bankr. M.D. Fla. 1994); *Steven P. Nelson, D.C. P.A. v. General Electric Capital Corp. (In re Seven P. Nelson, D.C., P.A.)*, 140 B.R. 814 (Bankr. M.D. Fla. 1992); *Hillsborough Holdings Corp. v. The Celotex Corp. (In re Hillsborough Holdings Corp.)* 123 B.R. 1004 (Bankr. M.D. Fla. 1990): *Isackson v. Heller Financial, Inc. (In re Kasual Kreation, Inc.),* 54 B.R. 915, 916 (Bankr. S.D. Fla. 1985) ("case law is <u>replete</u> with instances where 11 U.S.C. § 105(a) has been utilized to enjoin court proceedings against non-debtor parties that would have an impact

7

on Debtor's bankruptcy case") (citing numerous authorities, including *Otero Mills, supra*) (emphasis added); a*ccord, In re Transit Group, Inc.* 2002 Bankr. LEXIS 1390 (Bankr. M.D. Fla. Dec. 6 2002) (adopting Circuit Court case law to effect that bankruptcy courts have authority under § 105(a) to approve releases in chapter 11 plans in favor of third party non-debtors under appropriate facts in context of attempted corporate reorganization).

29. It is important to note that Yianilos and Rudnick do not seek permanent relief from having to defend the Actions; they seek this relief solely during the pendency of this Chapter 11 bankruptcy case.

30. Debtor respectfully directs the Court's attention to *Steven P. Nelson, supra* which Debtor submits is particularly instructive here. In *Steven P. Nelson,* the debtor, which operated a chiropractic clinic, sought entry of a preliminary injunction temporarily staying prosecution of state court actions against the debtor's principal based on guarantees he had issued based on the debtor's argument, *inter alia,* that without such relief the principal would not be able to devote sufficient time to facilitate a successful reorganization. *See Steven P. Nelson*, 140 B.R. at 816. Likewise, in the instant case, Debtor operates a business which relies heavily on years of experience which Yianilos and Rudnick bring. Without their specialized knowledge of the Property and the ability to focus on the construction and sale of the Property, subcontractors will suffer and the jobs of some hardworking individuals may be jeopardized. The pendency of the Actions and the impact that such actions have requires temporary relief from having to defend the Actions to focus their full energies and attentions on effectuating a successful reorganization and providing customer service. In granting the injunction sought by the debtor, the *Steven P. Nelson* Court stated that "[i]t no longer can be gainsaid that bankruptcy courts have the authority to grant injunctive relief and to enjoin proceedings against non-debtors that would materially impact a debtor's effort to reorganize." *Id.*

8

Continuing, that court noted that "[t]here is considerable case authority supporting the use of § 105(a) as a means of providing this protection to non-debtors such as individual guarantors and <u>key officers of a debtor corporation</u>. *Id.* (citing numerous authorities, including *Otero Mills* and *Kasual Kreation, supra)* (emphasis added).

31. The factors Courts apply in determining whether to grant injunctive relief are as follows (i) substantial likelihood of success on the merits; (ii) a substantial threat that the movant will suffer irreparable harm if the injunction does not issue: (iii) the potential injury the movant may suffer if an injunction does not issue is greater than the potential injury the opposing party might suffer if the injunction was granted; and (iv) whether the injunction will be adversely affect the public interest. *Hillsborough Holdings,* 123 B.R. at 1015 (citations omitted). "In the context of a chapter 11 case, the likelihood of success on the merits' means the probability of a successful plan of reorganization." *Id.* (citing cases, including *Kasual Kreations*, 54 B.R. at 916 ("Success on the merits has been defined as the probability of a successful plan of reorganization.")). As set forth below, all of the above-identified factors are met in this case and therefore, the injunctive relief requested herein should be granted.

32. As to the first factor, the Court file, including the DIP budgets and Debtor-in-Possession operating reports filed by Debtor to date, demonstrate that, despite historic dislocation in the credit and real estate market, Debtor is constructing the Project and consistent with the provisions of chapter 11 of the Bankruptcy Code, successfully reorganize. Debtor has met all of its post-petition obligations during the pendency of this Chapter 11 case. Moreover, the principals of Debtor have demonstrated their understanding and respect for the process by virtue of their working essentially for no pay during the months of December 2008, January and February 2009. Further, Debtor has sought approval of a class action settlement of customer deposits that may bring more

9

than $400,000 into the bankruptcy estate. It is also noteworthy that National City Bank, the secured second lender, has not sought stay relief.

33.     There is no reason to believe that Debtor in this case will not be successful in its reorganization. There is no reason to think that Debtor's economic performance will decline if the principals can devote their full energies to the management of the business. A successful reorganization is directly and proximately dependent upon the principals of Debtor being able to devote their full energies toward that goal.

34.     At present, the pending Actions constitute a substantial distraction from the operation of Debtor's business, and the temporary cessation of that distraction is critical to a successful reorganization. The import of Yianilos and Rudnick focused attention is heightened by Debtor taking over the duties of general contractor for the construction of the Property and will further increase upon Debtor's acquisition of additional financing to complete the construction. Further, Debtor is actively negotiating a Purchase and Sale Agreement. Because the record before the Court reflects that Debtor will be able to successfully reorganize, Debtor submits that the first factor has been met.

35.     There is a substantial threat that Debtor will be unable to successfully reorganize if the principals, who are the shareholders of Debtor and the individuals whose personal efforts form the majority of Debtor's efforts, are unable to devote their full energies to this Chapter 11 case. If the injunctive relief sought herein is not granted -- that is, the principals are not relieved of the obligation of defending the Actions during the pendency of this case -- there is a genuine likelihood that the current focus on defending the Actions (as opposed to the operation and management of the business of Debtor) will limit, if not preclude a successful reorganization. At present, the principals are spending significant amounts of time dealing with their attorneys and other advisors with respect

to defending the multi-million Actions in various venues. This time and energy would be much more productive if directed solely to helping to effectuate a successful reorganization. Therefore, Debtor submits that the second factor has been met.

36. As to the third factor, the potential injury Debtor may suffer (a failed reorganization, and conversion to Chapter 7 along with another suspension in the construction of the Property) if an injunction does not issue, it is exponentially greater than the potential injury the Defendants might suffer (delay in prosecution of the Actions) if the injunctive relief sough herein is granted. Therefore, Debtor submits that it has met the third factor.

37. The final factor requires a showing that the issuance of the injunction is not contrary to the public interest. The grant of the injunctive relief requested herein will be squarely in the public interest in fostering and effectuating the provisions of Chapter 11 of the Bankruptcy Code, in facilitating a successful corporate reorganization, in the safeguarding of the livelihood families, and in the corresponding ability of Yianilos and Rudnick to provide their undivided attention to the operation of the business during the chapter 11 process. Therefore, Debtor submits that it has met the fourth and final factor.

38. Based on the foregoing, Debtor respectfully requests that the Court enter an Order enjoining the continued prosecution of the Actions or the commencement of any further actions by the Defendants and directing the Defendants to immediately cease prosecuting the Actions during the pendency of this Chapter 11 case. Debtor seeks such other and further relief as may be just and proper.

## **LOCAL RULE 9075-1(b) CERTIFICATION**

Debtor certifies that it has made a bona fide effort to resolve this matter without hearing, to no avail.

Dated this 25th day of February, 2009

         Respectfully submitted,

         Messana, Weinstein & Stern, P.A.
         Counsel for Plaintiffs
         P.O. Drawer 2485
         Ft. Lauderdale, Florida 33303
         Telephone:  (954) 712-7400
         Facsimile:   (954) 712-7401


         /s/ Scott A. Underwood
         Thomas M. Messana, Esq.
         Florida Bar No. 991422
         Scott A. Underwood
         Florida Bar No. 0730041